**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **YASSIN SAFDAR MOHAMMAD,** | : | **No. 3:03cv1134** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DONALD KELCHNER, Superintendent;** | : | |
| **BLAINE STEIGERWALT, Unit** | : | |
| **Manager; and JEFFREY BEARD,** | : | |
| **Secretary of the Department of** | : | |
| **Corrections,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Presently before the Court for disposition is Defendants Donald Kelchner, Blaine Steigerwalt, and Jeffrey Beard's (collectively "Defendants") motion to dismiss the Plaintiff Yassin Safdar Mohammad's ("Plaintiff") complaint. Additionally before the Court is Plaintiff's motion to amend his complaint. These matters have been fully briefed and are ripe for disposition. For the reasons that follow, we will grant Plaintiff's motion to amend and deny Defendants' motion to dismiss. Additionally, we will amend our September 27, 2004 order, which partially granted summary judgment for Defendants, and we will transfer this case to the United States District Court for the Western District of Pennsylvania.

**I.      Background**

Plaintiff is a Sunni Muslim, and at the time he filed suit he was incarcerated in the Special Management Unit at the State Correctional Institute at Camp Hill ("SMU"), in Camp Hill, Pennsylvania. Defendant Donald Kelchner is the Superintendent of Camp Hill, Blaine Steigerwalt was an SMU Unit Supervisor, and Jeffrey Beard is the Secretary of the

Pennsylvania Department of Corrections.

The SMU is a special unit designed to deal with inmates who have presented disciplinary problems in the general prison population and who present a risk to other inmates, the prison staff, or the institution in general.  The SMU varies the prisoners' property restrictions and privileges based on their behavior.  The SMU encourages good behavior with additional privileges and punishes rule infractions, called "misconducts," with greater restrictions.  Prisoners in the SMU are categorized into five "Phases," with Phase V being the most restrictive, and Phase I being release into the general prison population.  Phase V is referred to as "disciplinary custody," while Phases I-IV are "administrative custody."  Mohammad currently has accumulated enough misconducts that he will be in Phase V until the year 2022.

The Qu'ran commands that Muslims pray five times a day.  When a Muslim prays, he kneels on the ground, and prostrates his upper body to the floor.  The Qu'ran mandates that Muslims pray on a clean surface.  The standard practice among Muslims in general is to pray on a prayer rug to ensure that their prayer surface is clean.  Prayer rugs, however, are not mandated by the Qu'ran.  The SMU regulations prohibited Plaintiff from possessing a prayer rug or placing his linens or towels on the floor to use as a prayer surface.  Additionally, the SMU has a rule from prohibiting the prisoners using their prison issue items in any manner other than their intended use.[1]

---

[1] The rule states that misuse results in a misconduct.  The prison officials do not strictly enforce this rule, and have not issued misconducts to Muslim prisoners who lay their items on the floor to pray.  Plaintiff

On July 9, 2003, Plaintiff filed suit under 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act, ("RLUIPA") 42 U.S.C. § 2000cc-1, seeking that the Court find that the SMU restrictions deprive him of his First Amendment right to the free exercise of Islam, and that the Court enjoin the SMU from depriving him of a prayer rug. On September 27, 2004 we granted Defendants' motion for summary judgment as to Plaintiff's First Amendment Claim, but denied it as to the RLUIP claim.

At some undisclosed time after we disposed of the summary judgment motion, Plaintiff was moved from the SMU to the Long Term Segregation Unit at SCI-Fayette County, Pennsylvania ("LTSU"). The LTSU also prohibits Plaintiff from possessing a prayer rug or using his linens or towels as a prayer surface. Defendants admit that with few exceptions the LTSU and SMU have the same policies and procedures. Defendants claim that the transfer moots Plaintiff's case or controversy, whereas Plaintiff seeks to amend his complaint to reflect his transfer to the LTSU.

## II.      Jurisdiction

As this case is brought pursuant to 42 U.S.C. § 2000cc-1, we have jurisdiction under 28 U.S.C. § 1331, which provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

## III.     Discussion

---

asserts that he has been admonished for improper use of his linens. While Defendant Steigerwalt has permitted Mohammad to lay his items on the floor, other SMU Unit Managers have instructed him not to. No SMU Unit Manager has given Mohammad a misconduct for this practice.

In their instant motion to dismiss, Defendants argue Plaintiff's transfer negated his case or controversy because Plaintiff is no longer subject to the regulations from which he seeks injunctive relief. Plaintiff responds that in the LTSU, he is subject to the same restrictions that he faced in the SMU, and therefore, his case is not moot. Plaintiff argues that instead of dismissing the case, we should allow him to amend his complaint to reflect his transfer to the LTSU. In light of the liberal policy regarding amended pleadings, we will grant Plaintiff leave to file an amended complaint, and we will transfer this case to the United States District Court for the Western District of Pennsylvania ("Western District"). Before we discuss these issues, in light of intervening changes in controlling law we are compelled to reconsider the portion of our September 27 order that granted summary judgment on Plaintiff's First Amendment claim.

### A.      Summary Judgment Reconsideration

The Third Circuit's decision in Banks v. Beard, 399 F.3d 134 (3d Cir. 2005) obliges this Court to reconsider our September 27, 2004 order granting summary judgment for Defendants on Plaintiff's First Amendment claim. Plaintiff filed a motion to reconsider on October 15, 2004, which we denied on October 19, 2004. Although we have no pending motion to consider before us, a district court may reconsider its own interlocutory opinions *sua sponte*. United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973) ("so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."). Furthermore, as our order did not dispose of every claim before the Court, it is "subject to revision at any time before the entry of judgment

adjudicating all the claims and the rights and liabilities of the parties." FED. R. CIV. P. 54(b).

Reconsideration is appropriate to, *inter alia*, correct a clear error of law or to prevent a

manifest injustice. General Instrument Corp. v. Nu-Tek Elecs. & Mfg., 3 F. Supp. 2d 602, 606

(E.D. Pa. 1998). We find that Banks directly addresses the issues in our summary judgment

order and compels us to reconsider.

In our summary judgment order, we analyzed whether the SMU's restriction on

Plaintiff's possession of a prayer rug was reasonable in light of the legitimate penological

objectives of the corrections system. To do so, we analyzed the following four factors: 1)

whether a valid, rational connection exists between the prison regulation and the legitimate

governmental interest put forward to justify it; 2) whether alternative means of exercising the

right remain open to inmates; 3) the impact of accommodating the asserted constitutional right

on guards and other inmates, and on the allocation of prison resources generally; and 4)

whether ready alternatives to the regulation are available to the prison. Turner v. Safley, 482

U.S. 78, 89-90 (1987).

Regarding the first factor, the defendants argued that its interest in rehabilitating the

prisoners was rationally connected to the restriction on prayer rugs. In other words, depriving

the prisoners of prayer rugs modifies their behavior and makes it less likely that they will

commit infractions or otherwise cause disruption. We noted that restrictions on property have

been found to be rationally related to rehabilitation, and we cited Gregory v. Auger, 768 F.2d

287, 289-90 (8th Cir. 1985) (holding that restrictions on mail for prisoners who committed

rules infractions were rationally related to the deterrence of future infractions because the

prisoners were warned of the punishment), <u>Daigre v. Maggio</u>, 719 F.2d 1310, 1313 (5th Cir.

1983) (finding that restrictions on mail for prisoners in solitary confinement were rationally

related to the legitimate prison interest of discipline because "solitary confinement is a

disciplinary measure whose very essence is the deprivation of interests the first amendment

protects"), and <u>Guarjardo v. Estelle</u>, 568 F. Supp. 1314, 1366-67 (S.D. Tex. 1983) (deciding

that limitations on publications available to prisoners in solitary confinement were rationally

related to the disciplinary process because they could strengthen the unpleasantness of such a

punishment, and thus enhance the deterrence effect).  Based on these three cases, we found that

the restriction was rationally related to rehabilitation.  <u>Banks</u> instructs that we were in clear

error in doing so.  <u>Banks</u> holds that where a non-disciplinary prison program's restrictions on

property infringe on inmates' First Amendment rights, the prison must produce evidence

establishing that the deprivation theory of behavior modification has some basis in human

psychology, or has proven effective with the relevant inmates.  <u>Banks</u>, 399 F.3d at 140-42.  The

prison has produced no evidence that prisoners actually respond to the restriction, or that a

psychological connection exists between property restrictions and behavior modification, and

we should not have assumed so.

    In <u>Banks</u>, the Third Circuit analyzed whether an LTSU restriction on access to

publications was rationally related to rehabilitation.  <u>Banks</u>, 399 F.3d at 140-42.  The court

noted that <u>Gregory</u>, <u>Daigre</u>, and <u>Guarjardo</u> all held that a property restriction can be rationally

related to rehabilitation.  <u>Id.</u> at 140.  The court stated, "[w]e recognize how such a rule could be

reasonably related to a penological interest in rehabilitation in 'disciplinary segregation' where

inmates are placed for 'specific rule infractions' and for limited and specific periods, but this

is not such a case." <u>Id.</u> at 141.  The court therefore required additional evidence that the

restrictions promoted rehabilitation.  <u>Id.</u>  It noted that in <u>Guajuado</u>, "the defendants offered

evidence as to the frequency and percentage of solitary confinements . . .which showed that the

negative perception of solitary confinement had a deterrent effect." <u>Id.</u>  In <u>Waterman v.</u>

<u>Farmer</u>, the court upheld a restriction on the possession of pornographic materials by sex

offenders because the prison submitted affidavits from two psychologists who testified that the

materials "threatened to thwart the effectiveness of the treatment."  <u>Id.</u> (quoting 183 F.3d 208,

215 (3d Cir. 1999)).  The <u>Banks</u> court found that without similar affidavits the record

contained no evidence to demonstrate that "the ban was implemented in a way that could

modify behavior, or [that] the DOC's deprivation theory of behavior modification had any basis

in real human psychology, or had proven effective with LTSU inmates."  <u>Id.</u> at 142.

  Similarly, in the present case, Defendants have produced no affidavits from

psychologists that establish that the deprivation theory of behavior modification has any basis

in psychology, nor have they produced any evidence that demonstrates that the deprivation

theory has proven effective with SMU inmates.  Furthermore, as with the LTSU in <u>Banks</u>,

Plaintiff was not placed in the SMU for a specific infraction nor for a definite period of time.[2]

Thus, no relationship exists between a specific infraction and Plaintiff's ability to posses a

---

  [2] We recognize that Plaintiff is no longer in the SMU and currently resides in the LTSU, the subject
of the holding in <u>Banks</u>.  Our decision to reconsider our summary judgment order is not influenced by the
change, nor are the differences between the two programs material to our reconsideration.  We make no
decision regarding Plaintiff's First Amendment claim as it relates to the LTSU.

prayer rug.  Defendants rely solely on the affidavit of one prison official, who describes the

goal of the SMU as encouragement of prosocial behavior through deprivations of property.

They have produced no affidavit that there is a rational basis for believing that this theory works

in practice. [3]  Accordingly, based upon Banks, we find that Defendants have failed to establish a

rational relationship between rehabilitation and the restriction of Plaintiff's right to possess a

prayer rug.   We find that their failure to establish the first Turner factor is fatal to their claim

that no genuine issue of material fact exists regarding whether the restriction is reasonable in

light of legitimate prison objectives.[4]  Therefore, we will amend our summary judgment order

to deny summary judgment on Plaintiff's First Amendment claim.

B.      Motion to Amend

Plaintiff has filed a motion to amend his complaint to reflect his transfer to the LTSU

and to dismiss his complaint against Defendant Kelchner and Steigerwalt, as they are no longer

supervising his incarceration.  Defendants contest the motion to amend, claiming that will be

prejudiced by the amendment.  After a careful review, we find that Defendants have not

established that they will be prejudiced and will we grant the motion to dismiss.

_____

[3] We also note that Plaintiff was in disciplinary custody in the SMU, but this fact is irrelevant to our analysis.  His prayer rug was not confiscated because he received disciplinary time.  Rather, it was taken away because he was a prisoner in the SMU.

[4] In our summary judgment order, we referred to security as a legitimate penological objective.  We did not analyze, however, how restricting access to a prayer rugs serves this interest. Rather, we addressed how the restriction serves the interest of rehabilitation, which in turn serves security.  Defendants have made no demonstration whatsoever that the restriction on prayer rugs serves some security purpose.  They have not asserted, much less established, that prisoners have used prayer rugs in ways that threaten security, or that such a potential is a realistic possibility.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading after a responsive pleading is served only by leave of the court.  FED.R.CIV.P. 15(a).  District courts are obligated to grant leave freely "when justice so requires."  FED.R .CIV.P. 15(a).  Although decisions on motions to amend are committed to the sound discretion of the district court, Gay v. Petsock, 917 F.2d 768, 772 (3d Cir.1990), courts liberally allow amendments when "justice so requires," and when the non-moving party is not prejudiced by the allowance of the amendment.  Thomas v. State Farm Ins. Co., 1999 WL 1018279, at *3 (E.D. Pa. 1999).

The Supreme Court discussed the liberal standard to amend a complaint under Rule 15(a), when it found in Forman v. Davis that "[i]n the absence of any apparent or declared reason--such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment ..., the leave sought should, as the rules require, be freely given."  Provenzano v. Integrated Genetics, et al., 22 F. Supp.2d 406, 410-11 (3d Cir. 1998) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

In applying Rule 15(a), the Third Circuit Court of Appeals regards the possibility of prejudice to the non-moving party as the "touchstone for the denial of the amendment." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir.1989) (quoting Cornell & Co., Inc. v. Occupational Safety and Health Rev. Comm'n, 573 F.2d 820, 823 (3d Cir.1978)). Absent undue prejudice, "denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or

futility of amendment."  Heyl & Patterson International, Inc. v. F.D. Rich Housing of the Virgin

Islands, 663 F.2d 419, 425 (3d Cir. 1981) (citing Cornell, 573 F.2d at 823).

     Defendants argue that they will be prejudiced in two ways.  First, they argue that instead

of granting leave to amend, we should dismiss this case as moot and require that Plaintiff file a

new case in the Western District to ensure that he exhausts his administrative remedies prior

adjudicating his LTSU claims.  Next, they argue that the inconvenience of litigating a dispute

occurring in the Western District will cause them prejudice.

          **1.**    **Exhaustion**

     Defendants do not assert that Plaintiff failed to exhaust his administrative remedies

before filing his suit alleging that the SMU restrictions are unconstitutional, but instead they

argue that they would be prejudiced if Plaintiff were to amend his complaint to assert his claim

against the LTSU without first providing Defendants with an opportunity to review his new

claims.   We disagree with Defendants.

     The exhaustion requirement states, "[n]o action shall be brought with respect to prison

conditions under Section 1983 . . . by a prisoner . . . until such administrative remedies as are

available are exhausted."  42 U.S.C. § 1997(e)(a).   The mandatory exhaustion requirement

serves the following underlying policies:

> (1) avoiding premature interruption of the administrative process and
> giving the agency a chance to discover and correct its own errors; (2)
> conserving scarce judicial resources, since the complaining party may be
> successful in vindicating his rights in the administrative process and the
> courts may never have to intervene; and (3) improving the efficacy of the
> administrative process.

Dehart v. Horn, 390 F.3d 262, 273 (3d Cir. 2004) (quoting Nyhuis v. Reno, 204 F.3d 65, 67

(3d Cir. 2000)).

In <u>Dehart</u>, the plaintiff exhausted his administrative remedies and brought suit under the Religious Freedom Restoration Act ("RFRA").  <u>Id.</u> at 267. After he filed suit, the Supreme Court declared the RFRA unconstitutional in <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997) and the <u>Dehart</u> plaintiff's RFRA claim was subsequently dismissed.  <u>Id.</u>  The case continued on other claims, and following the <u>Flores</u> decision, Congress enacted the RLUIPA as a replacement to the RFRA.  Plaintiff then amended his complaint to include an RLUIPA claim. <u>Id.</u>  Following the amendment, the defendants moved to dismiss for failure to exhaust administrative remedies, arguing that the exhaustion requirement under 42 U.S.C. § 1997(e)(a) provided a more stringent requirement and the prison must have another opportunity to administratively address the plaintiff's amended claims.  <u>Id.</u>  The <u>Dehart</u> court found that the plaintiff was not required to re-exhaust his claims, stating "we have never held that a prisoner must exhaust his claims more than once."  <u>Id.</u> at 273.  After determining that the two exhaustion standards are the same, the court found that the prison already had an opportunity to correct its errors, and forcing the plaintiff to re-exhaust his claim would serve none of the purposes of the exhaustion requirement.  <u>Id.</u> at 276.

We find this reasoning persuasive.  Defendants argue that they would be prejudiced should Plaintiff assert his claim against the LTSU without re-exhausting his administrative remedies because the purpose behind the LTSU may be different from the purpose behind the SMU.  The evidence does not support this speculation.  Instead, both Plaintiff's and

11

Defendants' evidence demonstrates that both programs "follow Department policy for

Administration of Security Level 5 Housing Units and other than access to differing privilege

structures, <u>follow the same policies and procedures</u>."  (Def. Ex. 1) (emphasis added).  Indeed,

Plaintiff still may not possess a prayer rug or use his linens as a substitute.  (Doc. 48, Pl. Ex.

H-J).

   This Court can find no reason, nor any statutory support, for requiring Plaintiff to re-

exhaust his claims.  Defendants have cited no case law in support of their argument.

Furthermore, such a requirement would be contrary to the very purposes of exhaustion.

<u>Dehart</u>, 390 F.3d at 276.  Defendants already have had the opportunity to address Plaintiff's

identical claims challenging the same policy, they have presented no evidence that the

administrative proceedings would be resolved differently from the previous proceedings, re-

exhaustion would waste administrative resources, and re-litigating this case following re-

exhaustion would waste judicial resources.  Therefore, we find that Defendants would not be

prejudiced if we allowed Plaintiff to amend his complaint to reflect that he is now subject to

the LTSU program instead of the SMU.[5]

--------

[5] Defendants have noted in their brief in opposition to Plaintiff's motion to amend that leave should
be denied when an amendment would be futile.  They have not, however,  met their burden to prove that
Plaintiff's amended claim would be futile because it will be dismissed for failure to exhaust.  As discussed
*supra*, the Third Circuit has never required re-exhaustion.  A plaintiff must exhaust only those administrative
remedies "as are available."  42 U.S.C. § 1997e(a).  Furthermore, as failure to exhaust is an affirmative
defense, it is the defendants burden to establish such a failure.  <u>Brown v. Croak</u>, 312 F.3d 109, 111 (3d
Cir. 2002). Based solely on the evidence before the Court, we cannot find that Plaintiff's amended
complaint would be dismissed on exhaustion grounds should Defendants so move, and thus, Defendants
have not proved that Plaintiff's amendment would be futile.  Although we find that the proposed amended
complaint is not futile, we make no ruling regarding the merits of Plaintiff's amended claim.

**2.    Inconvenient Venue**

Defendants additionally argue that venue properly lies in the Western District of Pennsylvania and they will be prejudiced by the delay and inconvenience of discovering facts occurring there.  As discussed below, we will transfer this case to the Western District, and thus, Defendants will not be prejudiced by litigating this case in an inconvenient forum. Accordingly, we will grant Plaintiff's motion to amend.

**C.    Transfer**

Defendants have argued that they will be prejudiced should they be forced to litigate Plaintiff's amended claim in the Middle District, and that the Western District would be more convenient.  Plaintiff has also argued that the Western District will be a convenience forum, as it is the location of his incarceration and the subject of this litigation.  Although neither party has formally moved to transfer venue, both have edified this Court that the subject matter of the case has shifted from the Middle District to the Western District.  Therefore, we will transfer this case for the convenience of the parties.  See Library Publications, Inc. v. Heartland Samplers, Inc., 825 F. Supp. 701, 705 n.3 (E.D. Pa. 1993) (court can transfer a case under 28 U.S.C. § 1404 *sua sponte*).

 "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Both parties urge that the Western District of Pennsylvania is a

convenient forum.  Plaintiff avers that the LTSU prevents him from freely exercising his

religion, and both Plaintiff and the LTSU are currently in the Western District of Pennsylvania.

The individuals who apply and enforce the policy against Plaintiff all reside in the Western

District of Pennsylvania.  Furthermore, as Defendants illustrate, the LTSU is beyond this

Court's 100 mile subpoena limit provided by Federal Rule of Civil Procedure 45(b)(2).

Therefore, as both parties argue that Plaintiff's transfer to the LTSU has changed the

circumstances of this case, we find that transfer to the Western District would serve the

interests of the parties and the judicial system, and we will transfer this case to the Western

District.[6]


### D.    Mootness

Defendants have filed a motion to dismiss, arguing that Plaintiff's transfer moots the

present controversy between the parties.  In light of our decision to allow Plaintiff to amend

his complaint, we disagree.

"[A] federal court has neither the power to render advisory opinions nor to decide

questions that cannot affect the rights of litigants in the case before them."  Sutton v. Rasheed,

323 F.3d 236, 248 (3d Cir. 2003) (citations omitted).  A case is moot when the court no

longer is able to provide the plaintiff with effective relief.  See Abdul-Akbar v. Watson, 4 F.3d

195, 206 (3d Cir. 1993).  Where a defendant voluntarily ceases the alleged wrong, the

---

[6] The Western District is a proper venue because a substantial part of the events giving rise to the amended claim occurred there.  28 U.S.C. § 1391(a)(2).

14

plaintiff's claims are not moot if "there remains the possibly that plaintiffs will be disadvantaged in the 'same fundamental way.'"  Id. (citing <u>Northeastern Fla. Chapter of Assoc. Gen Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656, 662 (1993)).

Defendants argue that this case is moot as Plaintiff has been moved to a different facility pursuant to the reasoning in <u>Abdul-Akbar</u>.  There, the plaintiff was a prisoner who challenged the adequacy of the law library and legal resources provided in the Maximum Security Unit ("MSU") where he was incarcerated. <u>Abdul-Akbar</u>, F.3d at 196.  While his case was pending before the district court, he was transferred out of the MSU.  Id. at 197. Following a trial, the district court found that the library was constitutionally inadequate and ordered the prison officials to provide an adequate law library and/or legal assistance to the inmates.  Id. at 201.  The Third Circuit vacated this order, finding that the plaintiff no longer had an interest in the MSU library, and therefore the court's remedy could not provide him with meaningful relief.  Id. at 206.

In the present case, although Plaintiff has been transferred to a new facility within the Pennsylvania Department of Corrections, his case or controversy is not moot because he is subject to the same policy and the same harm.  The Court may provide him with meaningful relief by enjoining the prison officials from enforcing the LTSU policy.  In <u>McPherson v. Coombe</u>, the plaintiff was a prisoner who alleged that his exposure to second hand smoke violated his Eight Amendment rights.  992 F. Supp. 229, 231 (W.D.N.Y. 1997).  After he filed suit, he was transferred from one facility to another.  Id.  After his transfer, he amended his claim to include the same allegations against the new facility.  Id.  While the court found that

15

his claims seeking injunctive relief against the previous facility were moot, the claims against the new facility were not.  Id.; see also Lane v. Reid, 559 F. Supp. 1047, 1050-52 (S.D.N.Y. 1983) (finding a live controversy after allowing the plaintiff to amend his complaint to include claims for improper transfer, where his previous claim for injunctive relief regarding conditions in the prison where he was formerly incarcerated was rendered moot by the transfer).

We find the present situation analogous.  We have allowed the Plaintiff to amend his complaint to reflect his transfer to the LTSU.  While we cannot provide him meaningful relief by issuing an injunction against the SMU, he now seeks relief in the form of an injunction against the LTSU.  He has established that he still is not allowed to possess a prayer rug, and he still is not allowed to use his linens as a substitute.  (Doc. 48, Pl. Ex. H-J).  In fact, Defendants' own evidence demonstrates that Plaintiff is subject to the same policies and procedures, and a live case or controversy exists between Plaintiff and Defendant Jeffrey Beard.[7]  Defendants submit the affidavit of Department of Corrections employee Ian Taggart, who describes that both the SMU and LTSU, "follow Department policy for Administration of Security Level 5 Housing Units and other than access to differing privilege structures, follow the same policies and procedures."  (Def. Ex. 1).  Thus, a court can still provide meaningful injunctive relief by ordering Defendant Jeffrey Beard to allow Plaintiff either to possess a prayer rug or use his

---

[7] We recognize that Defendants Donald Kelchner and Blaine Steigerwalt no longer supervise Plaintiff and thus injunctive relief posed against them is meaningless, but we may still order Defendant Jeffrey Beard, the Secretary of the Department of Corrections, to allow Plaintiff to use a prayer rug. Plaintiff's motion to dismiss Defendants Defendants Kelchner and Steigerwalt will be granted.

16

linens as a substitute, and this case is not moot.

## IV.    Conclusion

Plaintiff's transfer from the SMU in the Middle District of Pennsylvania to the LTSU in the Western District presents three intertwined issues: 1) whether Plaintiff should be granted leave to amend his complaint; 2) whether Plaintiff's transfer to a new facility renders the case moot; and 3) whether we should transfer this case to the Western District.  In light of the liberal policy in support of granting leave to amend pleadings, as established by the Federal Rules of Civil Procedure we will allow Plaintiff to amend his complaint and will not require him to re-file suit and re-exhaust his claims because Defendants have not established that they will be prejudiced by the amendment.  Plaintiff has an active controversy with the defendant because the courts can afford Plaintiff meaningful relief by ordering the prison executives either to provide Plaintiff with his prayer rug or to change their policies to allow him to pray on a clean surface.[8]  Additionally, as both parties' arguments underscore that the Western District is the more appropriate forum,  we will transfer this case.  Additionally we will amend our September 27, 2004 order and deny Defendants' motion for summary judgment on Plaintiff's First Amendment claim.  Banks v. Beard, 399 F.3d 134 (3d Cir. 2005) requires that Defendants produce evidence establishing a connection between deprivation of property and behavior modification to demonstrate a rational connection between property restrictions and

---

[8]  We recognize that some additional discovery may be necessary because the LTSU may have a different purpose for implementing the same policy, but requiring the parties and the court system to completely re-litigate the case from the beginning would waste judicial and administrative resources.

rehabilitating prisoners.  As Defendants have not done so, we will amend our order and deny

Defendants' motion to dismiss in its entirety.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **YASSIN SAFDAR MOHAMMAD,** | : | No. 3:03cv1134 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **DONALD KELCHNER, Superintendent;** | : | |
| **BLAINE STEIGERWALT, Unit** | : | |
| **Manager; and JEFFREY BEARD,** | : | |
| **Secretary of the Department of** | : | |
| **Corrections,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

     **AND NOW**, to wit, this 27th day of April 2005, it is hereby **ORDERED** that:

1)    Plaintiff's motion for leave to amend (Doc. 49) is **GRANTED**;

2)    Plaintiff's claims against Defendants Donald Kelchner and Blaine Steigerwalt are **DISMISSED**;

3)    Defendants' motion to dismiss (Doc. 40) is **DENIED**;

4)    Our Order partially granting summary judgment and dismissing Plaintiff's First Amendment claim (Doc. 33) is **AMENDED** to reflect that Defendants' motion for summary judgment (Doc. 16) is **DENIED**.

5)    This case is **TRANSFERRED** to the United States District Court for the Western District of Pennsylvania;

6)    The Clerk of Court is directed to close this case in this district.

                             **BY THE COURT:**

                             **s/ James M. Munley**
                             **JUDGE JAMES M. MUNLEY**
                             **United States District Court**